IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| REGINALD DENNY TURNER, | ) | |
| AIS # 158799, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOUIS BOYD, *Warden*, | ) | CIVIL ACT. NO.  2:11-CV-419-TMH |
| | ) | |
| and | ) | |
| | ) | |
| LUTHER STRANGE, | ) | |
| *Attorney General of Alabama*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In 2005, in the Circuit Court of Elmore County, Alabama, Reginald Denny Turner

entered a guilty plea to the offense of sexual abuse in the first degree and, as a habitual felony

offender, received a sentence of twenty years imprisonment.  He raises several substantive

claims which the court will not address because his habeas petition filed pursuant to 28

U.S.C. § 2254 is untimely under 28 U.S.C. § 2244(d). That statute establishes a one-year

period of limitations which applies "to an application for a writ of habeas corpus," and runs

"from the latest of":

> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State
> action in violation of the Constitution or laws of the United States is removed,
> if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

However, 28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."

Further, the limitation period may be "equitably tolled" on grounds apart from those specified in §2244(d) "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence." *Sandvick v. United States*, 177 F. 3d 1269, 1271 (11th Cir. 1999). "Equitable tolling is an extraordinary remedy which is typically applied sparingly." *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000). "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002).

Following his guilty plea, Turner was sentenced on March 31, 2005, and he appealed. The Alabama Court of Criminal Appeals dismissed his appeal and issued a certificate of judgment on June 16, 2005. Turner did not seek review in the Alabama Supreme Court. However, 287 days later, on March 30, 2006, Turner filed a petition for post-conviction review pursuant to Ala. R. Crim. P. 32. The trial court summarily denied his petition; Turner

2

appealed, and on November 2, 2007, the Court of Criminal Appeals remanded the case for the trial court to make specific findings of fact.  (Doc. 11-4).  After further proceedings, the trial court again denied Turner's petition.  He appealed and on May 22, 2009, the Court of Criminal Appeals affirmed the judgment of the trial court.  (Doc. 11-5).  Turner applied for a rehearing, which the Court of Criminal Appeals denied on June 19, 2009.  (Doc. 11-6). Turner then petitioned the Alabama Supreme Court for a writ of certiorari; on November 12, 2010, the Alabama Supreme Court denied the petition.  On November 12, 2010, the Alabama Court of Criminal Appeals certified its judgment as final.  (Doc. 11-8).

Because a total of 287 days elapsed between the date on which Turner's conviction became final and the date on which he filed his post-conviction petition in state court, Turner had only 78 days remaining on the one year period within which to file his habeas petition in this court.  His habeas petition was filed on May 27, 2011,[1] 196 days after the post-conviction proceeding certificate of judgment issued. Because he waited that long, he filed his habeas petition in this court 118 days too late.

In response to an order allowing him to show cause why his habeas petition should not be dismissed as untimely, Turner contends that his petition was untimely filed due to ignorance of the law and his *pro se* status.  However, an inmate's *pro se* status, lack of legal

---

[1]Although Turner's petition was stamped "filed" in this court on June 2, 2011, Turner signed the petition on May 27, 2011. A pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993). "Absent evidence to the contrary in the form of prison logs or other records, [this court] will assume that [the instant petition] was delivered to prison authorities the day [Turner] signed it . . ." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). In light of the foregoing, the court considers May 27, 2011 as the date of filing.

knowledge, failure to understand legal principles, and failure to recognize potential claims for relief at an earlier juncture do not constitute extraordinary circumstances sufficient to warrant equitable tolling of the limitation period. *Perez v. Fla.*, 519 Fed. Appx. 995, 997 (11th Cir. 2013) ("[W]e have not accepted a lack of a legal education and related confusion or ignorance about the law as excuses for a failure to file in a timely fashion." (citing *Rivers v. United States*, 416 F.3d 1319, 1323 (11th Cir. 2005))).   "As with any litigant, *pro se* litigants 'are deemed to know of the one-year statute of limitations.'" *Id*. (quoting *Outler v. United States*, 485 F.3d 1273, 1282 n.4 (11th Cir.2007)).

Turner alleges that he was prevented from defending the timeliness of his petition because, *after* he filed his § 2254 petition, the Defendants did not provide him with copies of the state court transcripts.  The state court transcripts record events that occurred when the limitations period for filing a petition pursuant to § 2254 had not begun to run, or when the limitations period was tolled by the filing of a Rule 32 petition. Turner has not identified any information that could conceivably be obtained from the state court transcripts that would be relevant to his failure to file his § 2254 petition before the expiration of the one-year statutory limitations period.  Clearly, Turner managed to file his § 2254 petition without transcripts. This, and his contention that transcripts should have been provided to him *after* the filing of his petition, certainly demonstrate that the unavailability of the transcripts did not hinder him from filing his petition; he could just as easily have filed a *timely* petition and continued to seek the transcripts. *Cf. Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002) ("The state's

failure to provide [the petitioner] with a transcript did not prevent him from filing his habeas corpus petition, and the time limit contained in § 2244(d)(1)(B) does not apply to this case."); *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001) (holding that equitable tolling did not apply because "[p]ossession of a transcript . . . is not a condition precedent to the filing of [postconviction] proceedings. A petition seeking collateral relief could have been filed, following which, if necessary for decision of the issues raised, the court could have ordered production of the transcript. . . . And we are not told which particular claims petitioner was prevented from raising by the lack of a complete transcript.").

Turner also argues that he was unable to timely file his petition because he had limited access to legal research materials and assistance in prison. "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds*, 430 U.S. at 825). To establish that lack of access to law libraries or legal assistance constitutes an unconstitutional impediment to meaningful access to courts, an inmate cannot simply show that his prison's law library or legal assistance program is "subpar in some theoretical sense." *Id*. Rather, the inmate must

establish that the lack of access to legal research resources "caused an actual harm, or in other words, unconstitutionally prevented him from exercising that fundamental right of access to the courts in order to attack his sentence or to challenge the conditions of his confinement." *Akins v. United States*, 204 F.3d 1086, 1090 (11th Cir. 2000) (citing *Lewis*, 518 U.S. at 355). ""[M]eaningful access to the courts is the touchstone." *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 823).

Turner alleges that his access to legal research was hindered because, due to a shortage of prison staff and a "continual lockdown situation" instituted to curb "numerous" incidents of gang-related violence inside the prison, the law library was open only on weekends and was available only to a limited number of inmates on a first-come, first-served basis. (Doc. 20 pp. 7-8). However, Turner does not allege that he personally was prevented from visiting the law library prior to the expiration of the filing deadline due to the restricted hours of library operation and first-come, first-served policy. In fact, from Turner's descriptions of the materials available in the library, and from his complaints about the lack of free pens and paper in the library, it is quite clear that he *was* able to use the library. *See Akins*, 204 F.3d at 1090 (holding that, to demonstrate an unconstitutional impediment to filing a postconviction petition, a prisoner must show that the impediment "prevented *him* from exercising [the] fundamental right to access the courts" (emphasis added)). Further, it is undisputed that the lockdown status and resultant limited library access was the product of the prison's efforts to curb inmate violence within the prison; as such, these conditions

6

were prompted by a "legitimate penological interest" and cannot constitute an unconstitutional impediment to Turner's right of access to the courts. *See id*. at 1090-91 (holding that a prison lockdown that prevented law library access did not constitute an unconstitutional impediment where "the prison was in lockdown status because of violent outbreaks" and, therefore, the lockdown was "reasonably related to the legitimate interest of prison safety and the safety of correctional officers").

Accordingly, the restricted library hours do not entitle Turner to equitable tolling or an extension of the filing deadline under § 2244(d). *See id*. at 1090 ("The mere inability of a prisoner to access the law library is not, in itself, an unconstitutional impediment."); *Dodd v. United States,* 365 F.3d 1273, 1283 (11th Cir. 2004) ("[L]ockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate"); *see also Miller v. Fla.*, 307 Fed. Appx. 366, 368 (11th Cir. 2009) ("[E]ven restricted access to a law library, lock-downs, and solitary confinement do not qualify as [extra]ordinary circumstances warranting equitable tolling." (citing *Akins*, 204 F.3d at 1089-90)).

Turner also argues that he was prevented from meaningful access to the courts because the inmate serving as the prison law library clerk had no legal training. (Doc. 20 p. 9). Turner also argues that the law library did not contain up-to-date legal materials and that "th[ere] were many months" when the library computers "were never properly updated relating to the case cites and authorities." *Id*. However, Turner has not offered any particular

or specific reason why the absence of a trained law clerk or shortage of consistently updated legal materials and case cites prevented him from filing his petition in a timely manner. *See Lewis*, 518 U.S. at 351 (holding that, because a prisoner has no "abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. . . . [T]he inmate . . . must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."); *see also Brandau v. Warden*, 476 Fed. Appx. 367, 370 (11th Cir. 2012) ("[W]e have previously held that the absence of a copy of the statute containing the relevant deadline in a prison law library did not constitute the kind of extraordinary circumstance that would warrant equitable tolling." (citing *Helton v. Sec. for Dep't of Corr.*, 259 F.3d 1310, 1312-14 (11th Cir. 2001))); *Paulcin v. McDonough*, 259 Fed. Appx. 211, 213 (11th Cir. 2007) (holding that equitable tolling was inapplicable where an inmate "asserted only the conclusory allegation that he was denied access to the library and his records, but failed to allege how his inability to obtain legal materials thwarted his efforts to file a timely federal proceeding").

Finally, Turner alleges that he had some difficulties obtaining the standard form for filing his § 2254 petition; however, he has failed to demonstrate that these difficulties were the result of an unconstitutional impediment or extraordinary circumstance interposed by the prison system, or that he exercised due diligence in obtaining the form. Despite the alleged

deficiencies in library resources, and no later than "early November 2010" (at least two months prior to the expiration of the filing deadline), Turner was aware that he needed to access "form 2254" as a template for filing his petition. (Doc. 20-1). Turner attempted to obtain a copy of the standard form by asking a family member to mail the form to him in November 2010. The family member complied, but the mailing was intercepted by prison authorities pursuant to the prison's policy restricting personal mail and requiring that "legal mail" must be sent by an attorney. (Doc. 20-1). However, Turner makes no showing that the prison's restriction on personal mail was unrelated to a legitimate penological interest. *Cf. Akin*, 204 F.3d at 1090 (holding an inmate challenging a prison security regulation must rebut the presumption of reasonableness attached to that regulation); *Turner v. Safley*, 482 U.S. 78 (1987) (holding that a restriction on inmate mail was valid because it was reasonably related to the legitimate penological interest of prison security).

Further, Turner has not demonstrated that the seizure of his personal mail or the cost and effort required to obtain copies of legal materials within the prison unconstitutionally prevented him from accessing the courts, and he has not shown that he exercised due diligence in following prison procedures to obtain a copy of the form. As Turner admits, photocopies of legal materials were available upon request for 75 cents, although prisoners "had to write an inmate request slip and wait for weeks and sometimes months in receiving a response from the prison's administration." (Doc. 20 pp. 9-10). Turner *never alleges* that he attempted to obtain a copy of the "form 2254" from the library, that he was unable to

afford a photocopy or computer printout of the form, that he requested a copy from prison administration, that any such request was denied or delayed past the filing deadline, or that he personally was unable to obtain pen and paper[2] with which to manually copy the form. *See Arthur v. Allen*, 452 F.3d 1234, 1253 (11th Cir. 2006) (holding that, absent evidence of specific, diligent actions taken by the inmate to remedy the unavailability of materials needed to file a habeas petition, "the connection between the petitioner's untimely filing and any alleged inadequacies in the library is insufficient" (citing *Helton*, 259 F.3d at 1314)). Clearly, Turner was able to access the form he needed by some method available to him within the prison because he used the form for filing his untimely petition. (Doc. 1). Thus, regardless of any prison policies that affected his ability to gather legal materials by personal mail, Turner has failed to demonstrate that the resources that *were* available to him in prison were so inadequate that they meaningfully prevented him from filing his petition in a timely manner. *See Lawrence v. Fla.*, 549 U.S. 327, 336 (2004) (holding that, to successfully invoke equitable tolling, the prisoner must show that he diligently pursued his rights but was nevertheless prevented from timely filing by an extraordinary circumstance); *Lewis*, 518 U.S. at 355-56 (holding that, in considering whether a prison's legal resources satisfy the constitutional guarantee of access to courts, the focus is on whether the *available* resources

---

[2]Turner argues that the prison library was inadequate because prisoners were not provided with *free* pens and paper. However, Turner does not allege that *he personally* was prevented from filing his petition in a timely manner due to an inability to afford or obtain writing materials. Moreover, from his petition, it is clear that he was able to obtain any necessary writing implements. *See Lewis*, 518 U.S. at 351 ("[T]he inmate . . . must . . . demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.").

are adequate to confer the capability of collaterally attacking a sentence; courts must "leave it to prison officials to determine" the "particular methodology" that will be used within each prison to satisfy this requirement).

In sum, the court finds that the tools Turner needed to file his petition are available within the prison, and Turner has not demonstrated that those tools were inaccessible with reasonable diligence on his part prior to the expiration of the filing deadline.  Accordingly, the court concludes that the filing deadline was not tolled either by the provisions of 28 U.S.C. § 2244(d) or by the doctrine of equitable tolling.  Turner's petition is due to be dismissed as untimely.

### CONCLUSION

Accordingly, for the foregoing reasons, it is the **RECOMMENDATION** of the Magistrate Judge that the petition for habeas corpus relief be denied and that this case be dismissed pursuant to 28 U.S.C. §2244(d).  It is further the **RECOMMENDATION** of the Magistrate Judge that the costs of this proceeding be taxed against the petitioner.  It is further

**ORDERED** that the parties shall file any objections to this Recommendation on or before **November 8, 2013**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the

Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 25th day of October, 2013.


        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

.